COMMONWEALTH of Kentucky, Appellant,

v.

Ed ASHCRAFT, Appellee.

Court of Appeals of Kentucky.

April 5, 1985.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court June 26, 1985.

David L. Armstrong, Atty. Gen., Arthur L. Brooks, Sp. Atty. Gen., Lexington, for appellant.

James M. Crawford, Berry & Floyd, Carrollton, for appellee.

Before GUDGEL, LESTER and REYNOLDS, JJ.

LESTER, Judge.

This is an appeal on behalf of the Commonwealth from a judgment of the Owen Circuit Court which found KRS 161.190 unconstitutional.

That statute provides as follows:

No person shall upbraid, insult or abuse any teacher of the public schools in the presence of the school or in the presence of a pupil of the school.

The appellee, Ed Ashcraft, was charged with violating this section on the basis of statements made by him to his daughter's teacher in the presence of several students. The teacher alleged that Mr. Ashcraft made various demands upon her, refused to discuss the matter with her privately, and intentionally humiliated and intimidated her. The appellee moved to dismiss the complaint on the basis that the statute above referred to was both unconstitutionally vague and overbroad in violation of both the United States Constitution and the Kentucky Constitution. By order of April 6, 1984, the Owen District Court granted the motion to dismiss, and the circuit court affirmed.

As noted, the court below found the statute to be both vague and overbroad. While these two concepts often overlap, the parties have discussed each separately and we attempt to do the same. It has been held that an enactment may be void for vagueness where it fails to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972).

The district court, in its opinion, considered dictionary definitions of the statutory terms "upbraid, insult, and abuse,"

and concluded that these words do not suf- ficiently inform a person of what actions are prohibited. In the words of the trial judge, "one man's gross indignity might be another's cup of tea."

Appellant contends that the statute should not be construed so subjectively but rather should be evaluated in the objective sense of what would be insulting to the ordinary person. In support of its argu- ment, the Commonwealth points to *Chap- linsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), which up- held a vagueness challenge to a statute prohibiting the use of "offensive, derisive or annoying" language.

However, it is important to note that the court's decision in *Chaplinsky* was based on the state court's construction that the statute referred only to "fighting words." Such language or "words which by their very utterance inflict injury or tend to incite an immediate breach of the peace" are not protected by the First Amendment. *Id.* 315 U.S. at 573, 62 S.Ct. at 770. On the other hand, words which merely offend, disgrace, anger or frustrate may not be prohibited in violation of one's right to freedom of speech. *Lewis v. City of New Orleans*, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974).

Pursuant to *Chaplinsky, supra*, and its progeny, a statute such as this can pass constitutional muster, in the federal courts, if the state courts interpret it as not inter- fering with speech protected by the First Amendment. In the recent case of *Kolen- der v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), the Supreme Court again illustrated the power of the state courts to construe a statute so as to limit its application.[1]

Thus, as appellant points out, this Court could adopt a limiting construction of KRS 161.190 which might avoid the constitution- al defects imputed by appellee. Such an interpretation by this Court however,

would of course, be subject to review by our state's highest court. Absent cases from other jurisdictions upholding similar statutes and absent some direction from our Supreme Court, we hesitate to "cut and paste" this legislation in order to save it.

While this Court did uphold the constitu- tionality of KRS 508.080(1)(a), the criminal statute on "terroristic threatening," in *Thomas v. Comm.*, Ky.App., 574 S.W.2d 903 (1978), that was on the basis that the language proscribed therein was outside protection of the First Amendment. In that case, we looked to other jurisdictions which had upheld similar statutes and de- termined that the language was sufficient- ly explicit to put the average citizen on notice as to the conduct proscribed. *Id.* at 909. We would be hard-pressed to find that the language in the present statute can be limited to "fighting words" only.

Furthermore, the only case outside this jurisdiction which dealt with a similar stat- ute found the legislation unconstitutional. In *McCall v. Florida*, 354 So.2d 869 (Fla. 1878), the statute penalized the same type of speech or conduct prohibited by KRS 161.190. The Florida court held their stat- ute unconstitutional since it was "... not narrowly tailored to further the state's le- gitimate interest," and it further encom- passed free speech protected by the First and Fourth Amendments. *Id.* at 872. We agree with the reasoning of the *McCall* court and note that the Florida statute was even more restrictive and narrowly tailored to the state's interest than the legislation at hand.

A statute punishing one criminally for the use of words alone must be careful- ly drawn or authoritatively construed to punish only unprotected speech. *Gooding v. Wilson*, 405 U.S. 518, 522, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408, 414 (1972). While the appellee's comments to the com- plainant/teacher may have been annoying and insulting, they did not amount to un-

---

1. It is important to note that the Court in *Kolen- der* concluded that a statute requiring a suspect to provide "credible and reliable" identification was unconstitutionally vague, even as it had

been construed by the state's appellate court, in that it contained no standard for determining what would satisfy the requirement. *Kolender*, 461 U.S. at 358, 103 S.Ct. at 1858.

protected speech. While his conduct was inappropriate and in disregard of the proper channels for dealing with school-related problems, there was no showing that the teacher or anyone present was violently aroused or incited to breach the peace. *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 *reh. den.* 404 U.S. 876, 92 S.Ct. 26, 30 L.Ed.2d 124 (1971).

■ There are numerous cases standing for the proposition that First Amendment rights are not magically given up when one steps through the schoolhouse door. We believe this applies to parents as well as to teachers and students. *Perry Educ. Ass'n. v. Perry Local Educator's Ass'n.,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).

■ It is true, as appellant contends, that the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired. *Heffron v. Int. Society For Krishna Consciousness*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981). Accordingly, reasonable time, place, and manner restrictions have been upheld where they serve a significant governmental interest and contain sufficient standards which leave open alternative channels of communication.

While we agree that there is a significant governmental interest in restricting expression which materially disrupts classes or which impairs the dignity of the teacher in the presence of his/her students, no intention to so limit KRS 161.190 can be read into the present language.

As it exists, and as the trial court pointed out, KRS 161.190 could be utilized to make it a crime to criticize a coach for his actions at a game with students present. A parent could be prosecuted for insulting a teacher at the dinner table in the presence of his child/student. The present statute makes it punishable to upbraid or criticize a public school teacher either at the school or at home or in any public or private setting if a pupil of the school is present. Likewise, one can be penalized for insulting or abusing a teacher at the school when no students are present.

■ This brings us to the overbreadth argument. A challenge to a statute on the basis that it is overbroad is essentially an argument that in an effort to control impermissible conduct, the statute also prohibits conduct which is constitutionally permissible. *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). While "fighting words" may not be protected, and while reasonable restrictions may be placed on protected speech, this statute is not "narrowly tailored to further the state's interest," *Grayned, supra*, 408 U.S. at 116, 92 S.Ct. at 2303; and we are not persuaded that this Court can so limit its application that it would withstand constitutional scrutiny.

■ Even if we were to treat our public schools as a nonpublic forum, as urged by appellant, we cannot find that the statute in question is reasonable in light of the particular nature and function of the forum. *Heffron, supra.* While alternative avenues for expression are commonly provided in our public schools, the present statute is so vague and overbroad that it could be seen as a blanket prohibition against critical expressions regarding a teacher. We would have to completely rewrite KRS 161.190 in order to remove constitutionally protected speech from its purview. Such is not the function of this Court.

In the alternative, the Commonwealth argues that the court below erred by failing to determine if any overbreadth in KRS 161.190 is real and substantial. It has been held that if an enactment does not reach a substantial amount of constitutionally protected conduct, then the overbreadth challenge must fail. *Hoffman Estates, supra,* 455 U.S. at 494, 102 S.Ct. at 1191; *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Because the overbreadth doctrine allows challenges from one whose own conduct may be clearly unprotected, that doctrine has been used only as a last resort by the federal courts.

*Id.* at 769, 102 S.Ct. at 3361. Having determined that the statute herein is unconstitutionally vague, we would not need to find it also overbroad, but we point out to the Commonwealth that we have stressed the potential embracing sweep of the statute over protected expression. *Hoffman Estates, supra,* 455 U.S. at 495, 102 S.Ct. at 1191; *Ferber, supra,* 458 U.S. at 772, n. 26, 102 S.Ct. at 3362, n. 26.

■ Accordingly, we find it unnecessary to determine whether the appellee's conduct and statements were protected under these facts, or whether his actions could fall within the permissible areas of the legislation. We are dealing here with a single sentence section, and we agree with the court below that KRS 161.190 is an unconstitutional violation of the First Amendment and Section 1(4) and Section 8 of the Kentucky Constitution.

From what we have said herein, we do not intend to convey the message that the legal philosophy is ours but rather one foisted upon us by the Supreme Court of the United States. Under the overbreadth doctrine, the First Amendment has been stretched to a point of torture in order to permit such individuals as Paul Cohen (*Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971)), David Rosenfeld (*Rosenfeld v. New Jersey,* 408 U.S. 901, 92 S.Ct. 2479, 33 L.Ed.2d 321 (1972)), and Wilbert Brown (*Brown v. Oklahoma,* 408 U.S. 914, 92 S.Ct. 2507, 33 L.Ed.2d 326 (1972)), to do and say whatever they want in total disregard of where they may be or who may be present. See the cases collected in the annotation at 45 L.Ed.2d 725 (1976). We should point out, parenthetically, that *Heffron, supra,* represents a swing of the pendulum in the opposite direction.

There could be little doubt that KRS 161.190 was enacted to protect the authority and dignity of our teachers, and nothing we have said should be construed that this Court subscribes to a contrary view of the position of those professionals. Nevertheless, in *Tinker v. Des Moines Community School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), written in an atmo-

sphere of what its author referred to as "... this relatively permissive, often disputatious society," the court commenced the decimation of school authority under First Amendment arguments similar to those made in the case at bar. Even though we have been compelled to reach the result that we did, our views are more closely aligned to those of Justice Black, dissenting in *Tinker.*

The judgment is affirmed.

All concur.