[No. B023312. Second Dist., Div. One. Aug. 26, 1987.]

PATRICIA A. KETCHENS et al., Plaintiffs and Appellants, v. IRA REINER, as District Attorney, etc., et al., Defendants and Respondents.

COUNSEL

Paul L. Hoffman, Gary Williams, Patricia Erickson and Mark Waldman for Plaintiffs and Appellants.

Cotkin, Collins & Franscell and Anthony P. Serritella for Defendants and Respondents.

OPINION

LUCAS, J.—Plaintiffs appeal from order denying their motion for preliminary injunction.

## I

### FACTS

Patricia Ketchens is the parent of two students at Workman High School in Los Angeles County. On April 9, 1986, Ms. Ketchens went to the school and engaged in a verbal interchange with her daughters' music teacher, Tanya Stupin. As a result of this incident, a criminal complaint was filed against Ms. Ketchens for violation of Education Code section 44811, insulting a teacher in the presence of a pupil, and Education Code section 44812, abuse of a teacher in the presence of other school personnel or pupils.

Ketchens was notified of these charges in a surrender letter sent by the Sheriff of Los Angeles County. Prior to the date set for her to answer these

charges, she responded, through counsel, requesting that the prosecution cease because the cited statutes were unconstitutionally vague and overbroad.

When prosecution continued, Ketchens filed the within action against the district attorney's office, the district attorney and deputy district attorney, the hearing officer, sheriff, assistant vice principal of Workman High School, and the music teacher, alleging violation of civil rights and seeking an injunction barring enforcement of the statutes. Also a plaintiff in the action is Glenda J. Phillips, a taxpayer, who seeks to restrain the expenditure of county and state funds on the enforcement of unconstitutional statutes.

Plaintiffs' application for a temporary restraining order was granted. After hearing on the order to show cause, the application for preliminary injunction was denied and the temporary restraining order was dissolved. Plaintiffs appeal from this order.

## II

### STANDARD OF REVIEW

"[T]rial courts should evaluate two interrelated factors when deciding whether or not to issue a preliminary injunction. The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued. [Citations.]" (*IT Corp.* v. *County of Imperial* (1983) 35 Cal.3d 63, 69-70 [196 Cal.Rptr. 715, 672 P.2d 121].) "On appeal, the question becomes whether the trial court abused its discretion in ruling on *both* factors." (*Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 286-287 [219 Cal.Rptr. 467, 707 P.2d 840], original italics.) And where, as in our case, the claim involves a facial attack on the constitutionality of an ordinance, the reviewing court's consideration of whether the trial court abused its discretion as to the likelihood of plaintiffs' prevailing on the merits properly involves a determination of the constitutionality of the ordinance as though the case had proceeded to trial. (*Id.,* at p. 290.)

## III

### OVERBREADTH

With these standards in mind, we consider first the likelihood that plaintiffs will prevail, based on their assertion that the statutes are unconstitu-

tionally overbroad. Education Code section 44811 provides: "Every parent, guardian, or other person who upbraids, insults, or abuses any teacher of the public schools, in the presence or hearing of a pupil, is guilty of a misdemeanor."

Section 44812 provides: "Any parent, guardian, or other person who insults or abuses any teacher in the presence of other school personnel or pupils and at a place which is on school premises or public sidewalks, streets, or other public ways adjacent to school premises or at some other place if the teacher is required to be at such other place in connection with assigned school activities is guilty of a misdemeanor, and is punishable by a fine of not less than one hundred dollars ($100) nor exceeding one thousand dollars ($1,000)."

Plaintiffs argue that these statutes, which punish "pure speech," are so broadly drawn that they prohibit not only unprotected speech, but also protected speech. ■ "The constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within 'narrowly limited classes of speech.' [Citation.] . . . [T]he statute must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression." (*Gooding* v. *Wilson* (1972) 405 U.S. 518, 521-522 [31 L.Ed.2d 408, 414, 92 S.Ct. 1103].)

The four categories of speech which have been held not entitled to First Amendment protection are fighting words, obscenity, defamatory false-hoods, and speech carrying a clear and present danger of incitement to violence. (*Spiritual Psychic Science Church* v. *City of Azusa* (1985) 39 Cal.3d 501, 513 [217 Cal.Rptr. 225, 703 P.2d 1119].) ■ Respondents argue that the statutes prohibit fighting words, and thus punish only unprotected speech.

The challenged statutes prohibit speech which "upbraids," "insults" or "abuses" a teacher in the presence of pupils or school personnel on school premises or at school activities. We can easily formulate statements falling under these terms which could be classified as fighting words—"[T]hose which by their very utterance inflict injury or tend to incite an immediate breach of the peace." (*Chaplinsky* v. *New Hampshire* (1942) 315 U.S. 568, 572 [86 L.Ed. 1031, 1035, 62 S.Ct. 766].) But we can just as easily formulate statements punishable by the statute which would not be likely to cause an average addressee to fight. As plaintiffs suggest, the following expressions of opinion could be criminal offenses if uttered in the hearing of a student: "Tanya Stupin is a poor teacher, she is insensitive to the needs of her students."

"Son, don't worry about your grade, Ms. Stupin is too harsh a grader and expects too much from her students."

"I intend to transfer my daughter out of Ms. Stupin's class. She hasn't been treating her fairly and consistently gives her lower grades than she deserves."

"Tanya Stupin is the worst dressed teacher in the school."

These hypothetical statements are not "fighting words"; they are not obscene, nor, if true, are they libelous; they do not create a clear and present danger of incitement to violence. They are protected expressions of opinion which could impermissibly be swept within the terms of Education Code sections 44811 and 44812. An ordinance which sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments is unconstitutionally overbroad. (*Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 114-115 [33 L.Ed.2d 222, 231, 92 S.Ct. 2294].) Although these criminal statutes have a legitimate application, they also make unlawful a substantial amount of constitutionally protected speech, and are thus facially overbroad. (*Houston* v. *Hill* (1987) 482 U.S. 451, __ [96 L.Ed.2d 398, 410, 107 S.Ct. 2502].)

It does not matter that the words plaintiff Ketchens used might have been constitutionally prohibited under a narrowly and precisely drawn statute. ▮ Free expression is of such high value to all society, not just to those exercising their rights, that the United States Supreme Court has "consistently allowed attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. [Citations.]" (*Dombrowski* v. *Pfister* (1965) 380 U.S. 479, 486 [14 L.Ed.2d 22, 28, 85 S.Ct. 1116].) "This is deemed necessary because persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression." (*Gooding* v. *Wilson, supra,* 405 U.S. 518, 521 [31 L.Ed.2d 408, 413].)

▮ Overbreadth may be cured by authoritative judicial construction which narrows the statutes' application to unprotected speech. (*Lewis* v. *New Orleans* (1974) 415 U.S. 130, 134 [39 L.Ed.2d 214, 219-220, 94 S.Ct. 970]; *Wurtz* v. *Risley* (9th Cir. 1983) 719 F.2d 1438, 1442-1443.) **(3c)** However, the only judicial construction of the statutes challenged is a Court of Appeal determination that the term "other persons" in Education Code section 44811 does not include pupils. (*In re G. R. B.* (1982) 130 Cal.App.3d 788, 790 [182 Cal.Rptr. 53].) This is not a rehabilitative inter-

pretation which could overcome the overbroad language of the statutes. We conclude that Education Code sections 44811 and 44812 are unconstitutionally overbroad and that plaintiffs are therefore likely to prevail on their facial challenge to these statutes.

## IV

### VAGUENESS

Plaintiffs are also likely to prevail on their assertion that the statutes are unconstitutionally vague. ▮ "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone", . . . than if the boundaries of the forbidden areas were clearly marked.' " (*Grayned* v. *City of Rockford, supra,* 408 U.S. at pp. 108-109, [33 L.Ed.2d 222, 227-228], fns. omitted.)

In *Gooding* v. *Wilson, supra,* 405 U.S. 518, 527 [31 L.Ed.2d 408, 417], a statute prohibiting the use of "opprobrious words or abusive language, tending to cause a breach of the peace" was held not to define the standard of responsibility with the narrow specificity necessary to convey a definite meaning as to the conduct forbidden. (See also *Lewis* v. *New Orleans, supra,* 415 U.S. 130, 133 [39 L.Ed.2d 214, 219].)

In *Cohen* v. *California* (1971) 403 U.S. 15, 19 [29 L.Ed.2d 284, 290, 91 S.Ct. 1780], the portion of a statute prohibiting "offensive conduct" was held insufficient to put the ordinary person on notice as to what kinds of otherwise permissible speech or conduct would not be tolerated in certain places.

In *Coates* v. *Cincinnati* (1971) 402 U.S. 611, 614 [29 L.Ed.2d 214, 217, 91 S.Ct. 1686], the Supreme Court found unconstitutionally vague an ordi-

nance which made it a criminal offense for three or more persons to assemble on a sidewalk and "conduct themselves in a manner annoying to persons passing by . . . ." Noting that conduct that annoys some people does not annoy others, the court found the ordinance vague because it did not specify any standard of conduct at all, forcing men of common intelligence to guess at its meaning.

 We find no more satisfying clarity in the terms "upbraid, "abuse," or "insult" contained in the statutes before us. As noted in our discussion of overbreadth, no guidance has been provided by judicial interpretation. Nor do we find aid in the various dictionary definitions we have read. We are also unsure from the statutes whether the determination as to the upbraiding, insulting or abusive character of a statement is to be made with the sensitivity of the particular teacher in mind. These statutes do not clearly define their prohibitions. They do not provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited so he or she may act accordingly. They do not provide explicit standards for those who apply them. Their uncertain meanings may cause citizens to steer far wider of the unlawful zone than if the boundaries were clearly marked. They are therefore void for vagueness. (*Grayned* v. *City of Rockford, supra,* 408 U.S. at pp. 108-109 [33 L.Ed.2d at pp. 227-228].)

## V

### REGULATION IN SCHOOL CONTEXT

We find support for our conclusion in a case decided by the Florida Supreme Court. That case involved a challenge to a statute prohibiting, among other things, upbraiding, abusing or insulting of school staff in terms virtually identical to those of the statutes before us.[1] The court, in a unanimous opinion, recognized that the statute's worthy purpose was to insure that schools would operate smoothly, without undue interruption or disturbance from persons outside the school community. With guidance from the United States Supreme Court in *Grayned* v. *City of Rockford, supra,* 408 U.S. 104, 112 [33 L.Ed.2d 222, 230], the court then considered whether the statute was "written specifically for the school context, where the prohibited disturbances are easily measured by their impact on the normal activities of the school." Finding no language tying the prohibited expression to disruption of normal school activities at specific fixed times, and contemplating the many examples of harmless expression that could be proscribed under

---

[1] That statute, section 231.07, Florida Statutes (1975), provides in pertinent part: "Any person who upbraids, abuses or insults any member of the instructional staff on school property or in the presence of the pupils at a school activity, . . . shall be guilty of a misdemeanor of the second degree, punishable as provided by law. This section shall not apply to any pupil in or subject to the discipline of a school."

the statute, the court concluded that the statute was not narrowly tailored to further the state's legitimate interests, and encompassed speech protected by the First and Fourteenth Amendments. Thus, that statute was held unconstitutional. (*McCall* v. *State* (Fla. 1978) 354 So.2d 869, 870-872.)

The analysis of the Florida court is equally applicable to our statutes. We, too, recognize that such regulation has the legitimate purpose of preventing undue disruption or disturbances from persons outside the school community. (*Id.,* at p. 870; see also *In re G. R. B., supra,* 130 Cal.App.3d at p. 789.) ■ The United States Supreme Court "has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools. [Citations.]" (*Tinker* v. *Des Moines School Dist.* (1969) 393 U.S. 503, 507 [21 L.Ed.2d 731, 738, 89 S.Ct. 733].) Thus, expressive activity may be constitutionally prohibited on or near school grounds if it "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." (*Id.,* at p. 513 [21 L.Ed.2d at p. 741]; *Grayned* v. *City of Rockford, supra,* 408 U.S. 104, 118 [33 L.Ed.2d 222, 233-234].) It may not, however, be justified by "a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." (*Tinker* v. *Des Moines School Dist., supra,* 393 U.S. at p. 509 [21 L.Ed.2d at p. 739].)

■ Where a restriction on expression is shown to be necessary to further a significant governmental interest, it may be permissible in the form of reasonable "time, place and manner" regulations. (*Grayned v. City of Rockford, supra,* 408 U.S. at p. 115 [33 L.Ed.2d at p. 232].) In assessing whether the statutes before us are reasonable "time, place and manner" regulations, "we must weigh heavily the fact that communication is involved; the regulation must be narrowly tailored to further the State's legitimate interest." (*Id.,* at pp. 116-117 [33 L.Ed.2d at p. 232].)

■ Section 44811 prohibits expression "in the presence or hearing of a pupil . . . ." It contains absolutely no limitation as to the time, place or manner; *any* expression which is considered an upbraid, insult or abuse of a teacher is punishable, so long as it is in the presence of a pupil. This statute falls far outside the narrowly tailored regulation of expression which could be permissible.

Section 44812 contains some limitations requiring that the insult or abuse take place on school premises, adjacent to school premises, or at some other place if the teacher is required to be there in connection with an assigned school activity. However, neither statute ties the prohibited expression to disruption of normal school activities, nor are the prohibitions limited to

specific fixed times, such as when school is in session. Expression is prohibited without consideration of whether it disturbs or is about to disturb normal activities of the school. Under the authority of *Tinker* and *Grayned,* we find these statutes are not reasonable time, place and manner regulations narrowly tailored to further the state's legitimate interest, and are therefore unconstitutional restrictions of protected speech.

## VI

### INTERIM HARM

 Having concluded that plaintiffs are likely to prevail on the merits in that these statutes are facially invalid, we now turn to the second prong of the test for issuance of a preliminary injunction, the question of interim harm. This requires a consideration of the interim harm plaintiffs are likely to suffer if the preliminary injunction is denied as compared to the harm defendants are likely to suffer if the injunction is issued. (*Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at p. 286.)

 The question is not a close one. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." (*Elrod* v. *Burns* (1976) 427 U.S. 347, 373 [49 L.Ed.2d 547, 565, 96 S.Ct. 2673]; *New York Times Co.* v. *United States* (1971) 403 U.S. 713 [29 L.Ed.2d 822, 91 S.Ct. 2140]; *American Booksellers Assn., Inc.* v. *Superior Court* (1982) 129 Cal.App.3d 197, 206 [181 Cal.Rptr. 33].)

Convinced as we are that plaintiffs have satisfied both elements necessary for the issuance of a preliminary injunction, we find that the trial court abused its discretion in denying their motion for preliminary injunction.

### DISPOSITION

The order is reversed. Plaintiffs to recover costs on appeal.

Hanson (Thaxton), Acting P. J., and Devich, J., concurred.