Brad CARNEY *v.* STATE of Arkansas

91-83 . 808 S.W.2d 755

Supreme Court of Arkansas
Opinion delivered May 6, 1991

*Marianne L. Chaney*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst.

Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This appeal is brought by a juvenile, appellant Brad Carney, from a conviction for public intoxication (a class C misdemeanor), where his sentence included suspension of his driver's license for one year. The appellant contends the statute authorizing this suspension violates the Equal Protection Clause of the federal and state constitutions due to age discrimination.

We do not agree, and we affirm the adjudication and sentence.

The facts are these. The appellant was arrested for public intoxication on August 17, 1990, while attending the Tontitown Grape Festival in Washington County. At the time of his arrest he was seventeen years old, his date of birth being February 17, 1973. The prosecutor subsequently petitioned that the appellant be adjudicated a juvenile delinquent, and he was so adjudicated on October 2, 1990, after a hearing before the trial court. He was then sentenced on October 30, 1990, to a fine, probation, public service, court costs and suspension of his driver's license for one year. The license suspension is authorized under Act 93 of 1989, now codified as Ark. Code Ann. §§ 5-64-710, 5-65-116, and 27-16-914 (Adv. Code Svc. 1990-1991).

The state, as appellee, raises two procedural arguments on appeal and argues that they prevent our consideration of the appellant's equal protection issue. It first claims that the appellant failed to raise the equal protection issue before the trial court accompanied with the expansive arguments he now makes on appeal. We disagree. At the sentencing hearing the defense counsel addressed the court:

> Defense Counsel: Your Honor, we concur with all of the recommendations except the suspension of his driver's license. I believe that the State's doing this pursuant to Act 93 of 1989, which we feel violates the equal protection clause of the United States Constitution and Arkansas Constitution Article 2, Sections 2 and 3.

Subsequently, the trial court said in its ruling: "It's my view that the Act is constitutional, and it does meet the equal protection requirements of the Constitution of the United States and the

Constitution of the State of Arkansas." In our view the issue was sufficiently raised and decided. Had the trial court wished more expansive arguments at that time, the court could have requested the same. It was not incumbent upon the appellant to expand his objection beyond what was stated.

The appellee, who is represented by the Attorney General on appeal, also argues that the Attorney General was not notified that the constitutionality of a state statute was at issue at the trial level. According to the argument, this resulted in the issue's not being fully briefed before the trial court. The appellee cites in support of its argument the declaratory judgment statute which reads in part:

> (b) In any proceeding which involves the validity of a municipal ordinance or franchise, the municipality shall be made a party and shall be entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the proceeding and be entitled to be heard.

Ark. Code Ann. § 16-111-106(b) (1987).

■ We have interpreted this statute many times. We have reversed and remanded a finding by the trial court that part of a statute was unconstitutional where the Attorney General was not notified. *See Roberts* v. *Watts*, 263 Ark. 822, 568 S.W.2d 1 (1978). We have also refused to address the merits of an appellant's arguments on the constitutionality of the Arkansas replevin statutes, absent notice to the Attorney General. *See Olmstead* v. *Logan*, 298 Ark. 421, 768 S.W.2d 26 (1989). However, we have further said that "even though noncompliance with the notice requirement [of § 16-111-106(b)] is generally reversible error, reversal is not mandated by the statute." *City of Little Rock* v. *Cash,* 277 Ark. 494, 512, 644 S.W.2d 229, 237 (1982). We added in *Cash* that the purpose of § 16-111-106(b) is to prevent a statute or ordinance from being declared unconstitutional without a full adjudication with adversary parties.

■ Initially, we note that there has been a full adjudication of the equal protection issue before this court, including a brief by the Attorney General as counsel for the appellee. It is further

clear from the record that the appellant was not formally advised that he would have his license suspended under Act 93 until the sentencing hearing. Under these facts it would be impractical in the extreme to expect the appellant to notify the Attorney General in the middle of a hearing. Lastly, § 16-111-106(b) relates to civil actions — and by the chapter heading it specifically relates to Declaratory Judgments — where the state is not automatically a party. Here, that is not the case. The state was a party at the sentencing hearing and was represented by the prosecuting attorney. We find no merit in the appellee's argument.

Turning now to the appellant's constitutional argument, Act 93, which is the legislation at issue, provides in part:

> Section 1. Whenever a person who is less than eighteen (18) years of age pleads guilty, nolo contendere or is found guilty of driving while intoxicated under Chapter 65 of Title 5 of the Arkansas Code or of any criminal offense involving the illegal possession or use of alcohol or controlled substances, or is found by a juvenile court to have committed such an offense, the court shall prepare and transmit to the Department of Finance and Administration within twenty-four (24) hours after the plea or finding an order of denial of driving privileges for the minor. In cases of extreme and unusual hardship, the order may provide for the issuance of a restricted driving permit to allow driving to and from a place of employment or driving to and from school.

> Section 2. Upon receipt of an order of denial of driving privileges under this act, the Department of Finance and Administration shall suspend the motor vehicle operator's license of the minor for twelve (12) months or until the minor reaches 18 years of age, whichever is longest.

> . . . .

Act 93 of 1989, now codified as Ark. Code Ann. §§ 5-64-710, 5-65-116, 27-16-914 (Adv. Code Svc. 1990-1991). On its face Act 93 sets out a classification between persons under the age of eighteen and those age eighteen and older. The appellant also

argues that a second classification exists between persons under age eighteen and persons who are eighteen, nineteen, and twenty who cannot purchase alcoholic beverages yet are not penalized by license suspension under Act 93.

 At the outset we observe that an Arkansas Act is presumed constitutional, and the burden rests upon the party challenging that constitutionality. *See Cozad* v. *State*, 303 Ark. 137, 792 S.W.2d 606 (1990). In addition, if a classification exists in an Arkansas statute and that classification has a rational basis and is neither unreasonable nor arbitrary, the statute will not be struck down on equal protection grounds. *See Henry, Walden & Davis* v. *Goodman*, 294 Ark. 25, 741 S.W.2d 233 (1987).

The emergency clause to Act 93 lends some insight to the purpose behind the Act:

> It is hereby found and determined by the General Assembly that additional enforcement mechanisms are urgently needed to deter persons under 18 years of age from illegally using or dealing in drugs; that this Act provides an additional enforcement mechanism; and that this Act should go into effect immediately in order to grant law enforcement officers and courts greater flexibility in dealing with the illegal use and sale of drugs.

Act 93 of 1989 (Third Extra. Session). The General Assembly clearly saw license suspension as a deterrent to the use of drugs (including alcohol) by those under age eighteen. This purpose is laudable and proper. Presumably, the General Assembly further looked to the dangers resulting from a combination of youth and alcohol, whether on the road or otherwise.

 Other states have wrestled with this same problem of lengthy license revocation for those under age eighteen as compared to those who are older. *See, e.g.,, In re Arthur W.*, 171 Cal. App. 3d 179, 217 Cal. Rptr. 183 (1985). In *Arthur W.*, a seventeen-year-old raised an equal protection claim and contested a California statute which revoked a driver's license for one year for those under eighteen years of age upon a finding that the person was driving while intoxicated. The California Court of Appeal upheld the statute, observing that the rights of minors are not coextensive with those of adults when it comes to driving on

public streets. The court further took into account the fact that revocation only transpired after a criminal offense. It concluded:

> The longer period of license revocation imposed upon minor offenders serves an additional state interest in the protection and safety of the minor, as well as the public at large, by removing from the streets and highways those children under 18 years of age who have clearly demonstrated the lack of judgment necessary to safely operate a motor vehicle.

*In re Arthur W.*, 171 Cal. App. at 190, 217 Cal. Rptr. at 190. This same rationale readily applies to the case before us. The appellant sees a difference between applying Act 93 and license suspension when intoxication associated with a vehicle is involved as opposed to public intoxication not associated with driving. We do not make that distinction. A rational basis exists for suspending a license under Act 93 in either instance.

We have previously held that the state's authority to supervise children is broader than that over similar actions by adults. *See Wright* v. *Dewitt School District*, 238 Ark. 906, 385 S.W.2d 644 (1965). And we recognize that the General Assembly had to draw the age line with accompanying penalties somewhere. Whether this line is drawn at age seventeen, eighteen, or twenty-one involves many factors including existing classifications under state law, which the General Assembly, no doubt, considered. The line drawn at age eighteen in Act 93, however, is reasonable and does not approach the level of irrationality or arbitrariness advanced by the appellant.

We hold, therefore, that Act 93 is constitutional on its face and as applied in this case and that the trial court was correct in its ruling.

Affirmed.