Stefany Yvonne SHOEMAKER *v.* STATE of Arkansas

00-915                                      38 S.W.3d 350

Supreme Court of Arkansas
Opinion delivered February 22, 2001

*Luffman & Bledsoe, Ltd.*, by: *James M. Luffman*, for appellant.

*Mark Pryor*, Att'y Gen., by: *James R. Gowen, Jr.*, Ass't Att'y Gen., for appellee.

R OBERT L. BROWN, Justice. The appellant, Stefany Yvonne Shoemaker, contests the constitutionality of Ark. Code Ann. § 6-17-106 (Repl. 1999), which provides that it is a misdemeanor for any person to abuse or insult a public school teacher who is performing normal and regular or assigned school responsibilities. We agree that the statute impinges on the First Amendment as well as the Due Process Clause of the Fourteenth Amendment of the United States Constitution. We reverse the order of the trial court and dismiss.

This appeal stems from events which occurred on October 19, 1999. On that day, Stefany Shoemaker, a 13-year-old student at Oakdale Junior High School in Benton County, was in her eighth-grade science class with her teacher, Kathy Caton, who had given the students a science assignment to complete. After turning in the assignment, her students were permitted to leave the class to complete an extracurricular activity, which was writing a poem for the garden club. Stefany had tried to turn in her science assignment either two or three times — two times according to Ms. Caton and three times according to Stefany. Each time she was told that her work was not correct and to try again. Following her last attempt to turn the assignment in, Stefany returned to her desk and said the word "bitch," which was heard by Ms. Caton and many, if not all, of her classmates. Ms. Caton immediately looked up, determined that Stefany had said the word, and sent Stefany to the school office. Stefany was subsequently suspended by the school's principal for three days. Thereafter, the matter was turned over to the prosecutor who petitioned that she be adjudged a delinquent pursuant to § 6-17-106. On January 26, 2000, a hearing on the delinquency matter took place, and during the hearing, Stefany moved to dismiss the petition on constitutional grounds. She argued that the statute was unconstitutionally vague due to the broad range of

conduct that it could conceivably proscribe and that it violated her First Amendment right to free speech.

Following the hearing, the trial court took the constitutionality issue under advisement and ordered both parties to prepare briefs. On April 14, 2000, the court issued an order denying Stefany's motion to dismiss and adjudicating her delinquent. The court specifically found:

> 4) Defendant's motion to dismiss the case due to its unconstitutionality is denied. The words "insult or abuse" as used in ACA 6-17-106 are of such common usage or understanding, especially in a school setting, that they do not fail to give notice of the behavior proscribed. Further, the statute does not fail due to a constitutionally suspect classification that excludes certain classes while including others. Public school teachers are more likely to suffer "insult or abuse" from students than are private school teachers, thus, the legislature's classification is rational.

> 5) There is little or no doubt in this Court's mind that the juvenile's use of the word "bitch" under the circumstances adduced at trial were directed at her teacher, and the word was meant as an "insult or abuse."

The court set her disposition hearing for May 15, 2000.

On May 15, 2000, Stefany filed her notice of appeal from the trial court's Delinquency Order. The court of appeals certified this case to our court for determination. Following certification, the State filed a motion to dismiss appeal on October 9, 2000, and claimed that the trial court's order of April 14, 2000, was not a final order under Arkansas Rule of Appellate Procedure—Civil 2(a)(1). Thus, the State contended, this court was without jurisdiction to hear the appeal. On October 16, 2000, Stefany responded to the motion and said a Disposition Order and new notice of appeal would be filed. That same day, Stefany filed the trial court's Disposition Order and a notice of appeal. On October 23, 2000, the State and counsel for Stefany entered into a Stipulation to supplement the record with the Disposition Order and the new notice of appeal. Stefany then filed a Motion to Amend Brief with this court to include the Disposition Order in the Addendum of her brief on appeal. We granted the motion on November 9, 2000, and the Disposition Order was added to the Addendum in Stefany's brief. The State has not pursued its motion to dismiss, and this

court determined that the State's motion would be submitted with the briefs of the parties for resolution:

## I. Jurisdiction

We first address the State's motion to dismiss the appeal for lack of a final order. This motion appears to be moot as far as the parties are concerned. Stefany, in her response to the State's motion to dismiss, advised this court that the Disposition Order and new notice of appeal would be filed. That was done. This court then granted Stefany's Motion to Amend Brief and to supplement the Addendum with the Disposition Order. The new notice of appeal dated October 16, 2000, was added to the record as part of the Stipulation of the parties but was not abstracted. The question then is whether the failure to abstract the new notice of appeal under these facts is fatal to Stefany's appeal under Ark. Sup. Ct. R. 4-2(b). We think not.

■ The parties were engaged in a curative action to salvage the appeal with the full knowledge of this court. Again, Stefany, in her response to the State's motion to dismiss, advised this court that the Disposition Order and new notice of appeal would be filed. She then moved to add the Disposition Order to the Addendum of her brief and referred to the Stipulation by the parties to supplement the record. This court granted her motion and she amended her brief on November 13, 2000. The record was also supplemented with the Stipulation, Disposition Order, and new notice of appeal. Under these facts, we do not consider Stefany's abstract to be flagrantly deficient under Ark. Sup. Ct. R. 4-2(b)(3). This court was made aware by the motions and responses before this court that a new notice of appeal would be filed, and that was done.

## II. Overbreadth and Vagueness

Stefany argues (1) that § 6-17-106 is overbroad in that it impinges on protected speech, and (2) that it is vague because it does not adequately inform the public of proscribed conduct. The State concedes that § 6-17-106 violates the United States Constitution and has filed a brief in support of that position.

■ The general rule in cases which involve a question regarding the constitutionality of a statute is that the statute is presumed

constitutional, and the burden of proving otherwise is on the challenger of the statute. *See Kellar v. Fayetteville Police Dep't*, 339 Ark. 274, 5 S.W.3d 402 (1999) (citing *ACW, Inc. v. Weiss*, 329 Ark. 302, 947 S.W.2d 770 (1997)). Because statutes are presumed to be framed in accordance with the United States Constitution, we do not hold them invalid unless the conflict with the Constitution is clear and unmistakable. *See id.* (citation omitted). Moreover, all doubts are resolved in favor of a statute's constitutionality. *See State of Washington v. Thompson*, 339 Ark. 417, 6 S.W.3d 82 (1999) (citing *Foster v. Jefferson County Bd. of Election Comm'rs*, 328 Ark. 223, 944 S.W.2d 93 (1997)).

The statute at issue, § 6-17-106(a), provides:

> (a) Any person who shall abuse or insult a public school teacher while that teacher is performing normal and regular or assigned school responsibilities shall be guilty of a misdemeanor and upon conviction be liable for a fine of not less than one hundred dollars ($100) nor more than one thousand five hundred dollars ($1,500).

Ark. Code Ann. § 6-17-106(a) (1999 Repl.).

■ ■ The United States Supreme Court has made it clear that certain classes of speech may be prevented and punished without running afoul of the United States Constitution. These classes "include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting words' — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572 (1942). Thus, a "statute must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression." *Gooding v. Wilson*, 405 U.S. 518, 522 (1972).

■ Our court recognized these same principles in *Hammond v. State*, 255 Ark. 56, 498 S.W.2d 652 (1973), when we examined a breach-of-peace statute and reaffirmed our previous holding that the statute was constitutional.[1] In *Hammond*, we said:

---

[1] The statute at issue was Ark. Code. Ann. § 14-1412, which read in pertinent part:

> If any person shall make use of any profane, violent, vulgar, abusive or insulting language toward or about any other person in his presence or hearing, which language in its common acceptation is calculated to arouse to anger the person about or to whom it is spoken or addressed, or to cause

> It appears clear from *Chaplinsky* that any statute punishing or regulating the use of abusive language must be limited to fighting words. If the statute appears vague and unclear on its face, it can be preserved by the courts when restricted in its application to "fighting words" as defined by *Chaplinsky*. In other words, only that vile or abusive language which arouses anger to the extent likely to cause retaliation – fighting words – are within the meaning of the statute.

*Hammond*, 255 Ark. at 57-58, 498 S.W.2d at 653.

Section 6-17-106(a), on the other hand, is not limited to only "fighting words," as was the case of the breach-of-peace statute in *Hammond*. Additionally, as the State points out in its brief, other states have struck down statutes with language similar to that in § 6-17-106(a). Such a case was *State v. Reyes*, 104 Wash. 2d 35, 700 P.2d 1155 (1985). In *Reyes*, the statute at issue read:

> Any person who shall insult or abuse a teacher anywhere on the school premises while such teacher is carrying out his official duties, shall be guilty of a misdemeanor, the penalty for which shall be a fine of not less that ten dollars nor more than one hundred dollars.

*Reyes*, 104 Wash. 2d at 40, 700 P.2d at 1158. The Supreme Court of Washington analyzed the statute's constitutionality and concluded that the statute was a criminal statute which "punishes the spoken word." *Id.*, 700 P.2d at 1158. Noting the court's duty to construe a statute so as to uphold its constitutionality, the court found that the statute was not susceptible to a curative limitation in that it could not logically be limited in its application to fighting words. Specifically, the court stated that because "insult" is defined as "an act or speech of insolence or contempt," many insults cannot be categorized as "fighting words" as they are not "inherently likely to lead to a breach of peace or a 'violent reaction.' " *Id.* at 42, 700 P.2d at 1159 (quoting *Webster's Third New International Dictionary* 1173 (1971)). The court added that the word "abuse" is equally overbroad because its definition includes all "language that condemns or vilifies" as well as "physically harmful treatment." *Id.*, 700 P.2d at 1159 (quoting *Webster's*, at 8). The court held that

---

a breach of the peace or an assault, shall be deemed guilty of a breach of the peace. . . .

*Hammond v. State*, 255 Ark. 56, 57, 498 S.W.2d 652, 652-53 (1973).

because it could not determine whether "abuse" as used in the statute was intended to punish words, acts, or both, the statute was void for vagueness as it failed to give fair notice of the conduct proscribed.

The Kentucky Court of Appeals held similarly in the case of *Commonwealth v. Ashcraft*, 691 S.W.2d 229 (Ky. App. 1985). In *Ashcraft*, the contested statute read:

> No person shall upbraid, insult or abuse any teacher of the public schools in the presence of the school or in the presence of a pupil of the school.

*Ashcraft*, 691 S.W.2d at 230 (quoting KRS 161.190). Noting that the court could adopt a limiting construction of the statute which might avoid the constitutional defects, the court declined to "cut and paste" the legislation in order to save it and concluded that it would be "hard-pressed to find that the language in the present statute can be limited to 'fighting words' only." *Id*. at 231. The court acknowledged that the appellee's actions were inappropriate but said that "there was no showing that the teacher or anyone present was violently aroused or incited to breach the peace." *Id*. at 232 (citations omitted). Recognizing that there were numerous cases standing for the proposition that First Amendment rights are not automatically abandoned when one steps through the schoolhouse door, the court stated that while there was "a significant governmental interest in restricting expression which materially disrupts classes or which impairs the dignity of the teacher in the presence of his/her students, no intention to so limit KRS 161.190 can be read into the present language." *Id*. The court concluded that "[w]hile alternative avenues for expression are commonly provided in our public schools, the present statute is so vague and overbroad that it can be seen as a blanket prohibition against critical expressions regarding a teacher[; w]e would have to completely rewrite KRS 161.190 in order to remove constitutionally protected speech from its purview [and s]uch is not the function of this court." *Id*. at 232.

Finally, the California Court of Appeals considered a related statute in *Ketchens v. Reiner*, 194 Cal. App. 3d 470, 239 Cal. Rptr. 549 (1987). In *Ketchens*, the statutes read:

> Education Code section 44811[ ]: Every parent, guardian, or other person who upbraids, insults, or abuses any teacher of the public

schools, in the presence or hearing of a pupil, is guilty of a misdemeanor.

Section 44812[ ]: Any parent, guardian, or other person who insults or abuses any teacher in the presence of other school personnel or pupils and at a place which is on school premises or public sidewalks, streets, or other public ways adjacent to school premises or at some other place if the teacher is required to be at such other place in connection with assigned school activities is guilty of a misdemeanor, and is punishable by a fine of not less than one hundred dollars ($100) nor exceeding one thousand dollars ($1,000).

*Ketchens*, 194 Cal. App. 3d at 475, 239 Cal. Rptr. at 551-52. In examining whether the challenged statutes were overbroad, the court stated that it could not only formulate statements which would be classified as "fighting words" as punishable by the statutes but could just as easily formulate statements which would not likely cause an average person to fight. The court noted that hypothetical statements of opinion about a teacher's harshness to students or unfairness or insensitivity or poor dressing habits did not rise to the level of "fighting words:"

[T]hey are not obsecene, nor, if true, are they libelous; they do not create a clear and present danger of incitement to violence. They are protected expressions of opinion which could impermissibly be swept within the terms of Education Code sections 44811 and 44812.

*Id.* at 476, 239 Cal. Rptr. at 552.

The California Court of Appeals concluded that the sections were unconstitutionally overbroad and that the plaintiffs were likely to prevail on their facial challenge to the statutes. The court then went on to examine the plaintiffs' claim that the statutes were also unconstitutionally vague and held that the plaintiffs would likely be successful on this issue as well. The court found no "satisfying clarity" in the terms "upbraid," "abuse," or "insult" as contained in the statutes and said that it was unsure from the statutes "whether the determination as to the upbraiding, insulting, or abusive character of a statement is to be made with the sensitivity of the particular teacher in mind." *Id.* at 478, 239 Cal. Rptr. at 553-54. The court concluded that because the statutes did not clearly define their prohibitions, they failed to provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that person may act accordingly.

As a final point, the court noted that neither statute at issue tied the prohibited expression to the disruption of normal school activities, nor were the prohibitions limited to specific, fixed times, such as when school was in session. The court concluded that under the authority of *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503 (1969), and *Grayned v. City of Rockford*, 408 U.S. 104 (1972), the statutes were not reasonable time, place, and manner regulations narrowly tailored to further the state's legitimate interest, and were therefore unconstitutional restrictions of protected speech.

We turn then to the case before us. We conclude that § 6-17-106(a) fails to proscribe only "fighting words." First, it is clear to us that the undefined terms "abuse" and "insult" could include protected speech. Thus, § 6-17-106(a) is overbroad. Although the doctrine of facial overbreadth should not be invoked "when a limiting construction has been or could be placed on the challenged statute," that does not appear to be possible here. *Bailey v. State*, 334 Ark. 43, 52, 972 S.W.2d 239, 244 (1998) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601 (1973)). "Insult" is defined as "to treat or speak to insolently or with contemptuous rudeness; affront" or "to affect as an affront; offend or demean." *The Random House Dictionary of the English Language* 989 (2d Ed. Unabridged 1987). "Abuse" is defined as "to treat in a harmful, injurious, or offensive way" or "to speak insultingly, harshly, and unjustly to or about; revile; malign." *The Random House Dictionary of the English Language* 9 (2d Ed. Unabridged 1987). Were this court to read into the statute a limitation to "fighting words," we would clearly be legislating in order to save the statute. This we will not do.

We further hold that § 6-17-106(a) is void for vagueness, as it does not define what precise conduct is proscribed. Although schools do have the right to discipline students for infractions of school rules, "[i]t can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Community Sch. Dist., supra.* The United States Supreme Court went on to say in *Tinker* that "where there is no finding and no showing that engaging in the forbidden conduct would 'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school,' the prohibition cannot be sustained." *Id.* at 509 (quoting *Burnside v. Byars*, 363 F.2d 744, 749 (5th Cir. 1966)). The same holds true in the instant case. What

language is insulting or abusive is not defined so as to put a reasonable person on notice of the proscribed conduct.

We do not disagree that the term "bitch" is derogatory and insulting to a teacher and should be the subject of school discipline and control by the school administration. However, that was done in this case, and Stefany was suspended from school for three days for her infraction. But we conclude that the General Assembly went too far in § 6-17-106(a) when it criminalized undefined insulting or abusive comments by any person to a teacher irrespective of the time, place, or manner of the speech. We concur with the caselaw from other states and hold that the language of § 6-17-106(a) cannot be salvaged as prohibiting merely fighting words.

Reversed and dismissed.