LARRY D. VAUGHT, Judge, concurring. I concur with the result reached by the majority because Schermerhorn’s constitutional argument is meritless, I write separately jr,because I disagree with the majority’s holding that Schermerhorn failed to preserve his constitutional argument for appeal by failing to adequately cite to a specific state or federal constitutional provision. I would hold that the constitutional argument was preserved but ultimately provides no basis for reversal. During the in camera hearing on the second day of trial, Shermerhorn’s attorney specifically argued that the statute was unconstitutionally “over broad” because it would punish unintentional viewing of the prohibited material. The majority holds that Schermerhorn failed to adequately raise his constitutional challenge to the trial court because [h]e never specifically identified what protected constitutional right was allegedly violated; nor did he name the United States or the Arkansas constitution, or both. Because no constitution (state or federal) was named in the arguments, we have no reference to any particular constitution, much less any developed argument from a particular provision of either the state or federal constitutions. I disagree. Arguing that a statute is “constitutionally over broad” is sufficient to preserve the issue. The overbreadth doctrine was developed in the context of the First Amendment to the Constitution of the United States and is often applied in conjunction with ■ the void-for-vagueness doctrine, which is rooted in the Due Process Clauses of the Fifth and Fourteenth Amendments.[1] Bloch’s Laiv Dictionary defines the Overbreadth Doctrine as “the doctrjne holding that if a statute is so broadly written that it deters free expression, then it can be struck down |7on its face because of its chilling effect—even if it also prohibits acts that may legitimately be .forbidden.” Black’s Law Dictionary (10th ed. 2014). Similarly, American Jurisprudence explains: Imprecise laws can be attacked on their face under two different doctrines: first, the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute’s plainly legitimate sweep; second, even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests. 16A Am. Jur. 2d Constitutional Law § 428. Arkansas courts have long recognized the overbreadth doctrine. See Shoemaker v. State, 343 Ark. 727, 736, 38 S.W.3d 350, 355 (2001); Bailey v. State, 334 Ark. 43, 52, 972 S.W.2d 239, 244 (1998). In both cases, the term “overbroad” was used as a term of art with a clearly understood meaning in the realm of constitutional law. For example, in Shoemaker, the Arkansas Supreme Court’s holding read simply, “Thus, § 6-17-106(a) is overbroad.” Shoemaker, 343 Ark. 727, 736, 38 S.W.3d 350, 355 (2001). In contrast to the case at bar, in Raymond v. State, 354 Ark. 157, 167, 118 S.W.3d 567, 574 (2003), the Arkansas Supreme Court held that Raymond , “failed to mention the terms ‘overbroad’ or ‘void for vagueness.’ Hence, there was no development of his claims relating to vagueness and over-breadth before the circuit court.” I disagree with the majority’s holding that Schermerhorn’s argument that the statute under which he was charged is “unconstitutional” because it was “over broad” in that it allowed the State to penalize inadvertent viewing of the prohibited images was insufficient to invoke the well-established overbreadth doctrine. Requiring that a litigant also cite to a specific provision of an identified state or federal constitution in order to preserve a constitutional challenge has far-reaching implications. Under this theory, we would not be able to reach the [^merits of an appeal in which the litigants argued to the trial court that their “free speech rights” or “due process rights” had been violated, unless they also specifically cited the First, Fifth, and/or Fourteenth Amendments to the Constitution of the United States. A litigant who argued that officers unconstitutionally searched 'him without a warrant or probable cause would have failed to preserve his argument unless he also specifically mentioned “the Fourth Amendment to the Constitution of the United States.” When invoking the right to privacy, is a litigant now required to also cite to the numerous constitutional provisions from which it was derived? The majority is correct that this court will not address issues raised for the first time on appeal and that we have rejected “general constitutional challenges.” However, it is important to remember the underlying rationale for that rule: “Issues raised for the first time.on appeal will not be considered because the circuit court never had an opportunity to make a ruling.” Johnson v. State, 2009 Ark. 460, 344 S.W.3d 74 (per curiam) (emphasis added) (citing Green v. State, 362 Ark. 459, 209 S.W.3d 339 (2005)). Therefore, the test for preservation cannot hinge solely on whether the litigant used the correct. “magic words” in citing to a specific constitutional provision. I also note that, to the extent that Schermerhorn may have failed to fully articulate his overbreadth argument, the record reveals that the trial court erroneously ruled that he could not challenge the constitutionality of the statute because he had not first provided notice to the attorney general’s office pursuant to Arkansas Code Annotated section 16-111-106, which states in full: (a) When the declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. |9(b) In any proceeding which involves the validity of a municipal ordinance or franchise, the municipality shall be made a party and shall be entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the proceeding and be entitled to be heard. Ark. Code Ann. § 16-111-106 (Repl. 2006). This statute has repeatedly been interpreted to mean that “when the constitutionality of a statute is challenged, the attorney general of this state must-be notified and is entitled to be heard.” Mason v. State, 2014 Ark.App. 285, at 5-6, 435 S.W.3d 510, 514 (citing Landers v. Jameson, 355 Ark. 163, 174, 132 S.W.3d 741, 748 (2003)). However, in Carney v. State, 305 Ark. 431, 434-35, 808 S.W.2d 755, 756-57 (1991), the Arkansas Supreme Court addressed a constitutional issue that had been raised below but for which the attorney general’s office had not been provided notice: We have interpreted this statute many times. We have reversed and remanded a finding by the trial court that part of a statute was unconstitutional where the Attorney General was not notified. See Roberts v. Watts, 263 Ark. 822, 568 S.W.2d 1 (1978). We have also refused to address the merits of an appellant’s arguments on the constitutionality of the Arkansas replevin statutes, absent notice to the Attorney General. See Olmstead v. Logan, 298 Ark. 421, 768 S.W.2d 26 (1989). However, we have further said that “even though noncompliance with the notice requirement [of § 16—111—106(b)] is generally reversible error, reversal is not mandated by the statute.” City of Little Rock v. Cash, 277 Ark. 494, 512, 644 S.W.2d 229, 237 (1982). We added in Cash that the purpose of § 16-lll-106(b) is to prevent a statute or ordinance from being declared unconstitutional without a full adjudication with adversary parties. Initially, we note that there has been a full adjudication of the equal protection issue before this court, including a brief by the Attorney General as counsel for the appellee. It is further clear from the record that the appellant was not formally advised that he would have his license suspended under Act 93 until the sentencing hearing. Under these facts it would be impractical in the extreme to expect the appellant to notify the Attorney General in the middle of a hearing. Lastly, § 16-lll-106(b) relates to civil actions—and by the chapter heading it specifically relates to Declaratory Judgments—where the state is not automatically a party. Here, that is not the case. The state was a party at the sentencing hearing and was represented by the prosecuting attorney. We find no merit in the appellee’s argument. hoAs Carney mentions above, our precedents on this issue are somewhat inconsistent. However, in light of Carney’s pronouncement that the statute specifically applies to civil cases (where the State is not a party), and because the supreme court in Carney allowed the appellee’s brief filed by the attorney general’s office to satisfy the requirement that there be a full development of the issue in an adversarial proceeding, the tidal court erred in denying Sehermerhorn the opportunity to present his constitutional challenge at trial. Therefore, I would reach the merits of Schermerhorn’s appeal. Sehermerhorn argues that the child-pornography statute under, which he was convicted, section 5-27-602, is unconstitutionally vague and overbroad because it -criminalizes “mere viewing” of illegal images as well as possession; and would therefore criminalize even inadvertent or unintentional viewing. His argument has no merit. Section 5-27-602 reads in full: (a) A person commits distributing, possessing, or viewing of matter depicting sexually explicit conduct involving a child if the person knowingly: (1) Receives for the purpose of selling or knowingly sells, procures, manufactures, gives, provides, lends, trades, mails, delivers, transfers, publishes, distributes, circulates, disseminates, presents, exhibits, advertises, offers, or agrees to offer through any means, including the Internet, any photograph, film, videotape, computer program or file, video game, or any other reproduction or reconstruction - that depicts a child or. incorporates the image of a child engaging in sexually explicit conduct; or (2) Possesses or views through any means, including on the Internet, any photograph, film, videotape, computer program or file, computer-generated image, video game, or any other reproduction that depicts a child or incorporates the image of a child engaging in sexually explicit conduct. (b) Distributing, possessing, or viewing of matter depicting sexually explicit conduct involving a child is a: (1) Class C felony for the first offense; and . (2) Class B felony for any subsequent offense. (c) It is an affirmative defense to a prosecution under this section that the defendant in good faith reasonably believed that the person depicted in the matter was seventeen (17) years of age or older. In Ark. Code Ann. § 5-27-602 (Repl. 2013). Statutes are presumed constitutional, and the burden- of proving otherwise is on the challenger of the statute. E.g., Jefferson v. State, 372 Ark. 307, 317, 276 S.W.3d 214, 222 (2008). If it is possible to construe a statute as constitutional, we must do so. Id., 276 S.W.3d at 223. Because statutes are presumed to be framed in accordance with the Constitution, they should not be held invalid for repugnance thereto unless such conflict is clear and unmistakable. Id., 276 S.W.3d at 223. Here, it is clear that the statute only prohibits “knowingly” “possessing or viewing” sexually explicit images, of children. The criminal code contains specific definitions of the term “knowingly.” A person acts knowingly with respect to the person’s conduct or the attendant circumstances when he or she is aware that his or her conduct is of that nature or that the attendant circumstances exist. Ark. Code Ann. § 5-2-202(2)(A). A person acts knowingly with respect to a result of the person’s conduct when he or she is aware that it is practically certain that his or her conduct will cause the result. Ark." Code Ann. § 5-2-202(2)(B). Under the plain language of the statute and the definitions contained in the criminal code, the statute does not criminalize inadvertent viewing. Moreover, there was significant evidence that Schermerhorn intentionally viewed and possessed the images. The evidence revealed that he downloaded the images to the computer’s hard drive, which could not have been- done inadvertently. Schermer-horn then showed these images to his niece by purposefully accessing them on his computer, demonstrating that he knew they were there and was intentionally viewing them. I therefore agree that Schermerhorn’s conviction should be affirmed. . While previous cases have held that the overbreadth doctrine is inapplicable outside the context of the First Amendment, Jegley v. Picado, 349 Ark. 600, 623, 80 S.W.3d 332, 344 (2002) (citing United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)), I note that the scope and substance of criminal statutes related to child pornography have long been the subject of First Amend- . ment overbreadth analysis. See, e.g., Reno v. Am. Civil Liberties Union, 521 U.S.844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997); United States v. Williams, 553 U.S. 285, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008).