[No. 13322-5-I. Division One. August 6, 1984.]

THE CITY OF SEATTLE, *Respondent*, v. THOMAS ALAN CAMBY, *Petitioner*.

*Kenneth S. Kagan* of *Seattle–King County Public Defender Association,* for petitioner.

*Douglas N. Jewett, City Attorney,* and *Betty Ngan, Assistant,* for respondent.

CALLOW, J.—Thomas Alan Camby appeals, on discretionary review, the King County Superior Court's decision on RALJ appeal which affirmed the Seattle Municipal Court's judgment convicting him of harassment. He claims there was insufficient evidence to establish his guilt.

On the evening of November 23, 1982, Glen Gray, a doorman–host at a restaurant, received complaints that Thomas Camby, the defendant, was bothering women customers in the lounge. Gray escorted the defendant toward the restaurant's exit and asked for the assistance of a Seattle police officer making a general business check.

As the defendant walked down the stairs to the exit he told Gray three to four times that he was going to take Gray outside and kick him. The police officer overheard the defendant say to Gray:

"I tell you what. Let's go outside so I can kick your ass. Just you and me, one on one," . . . "come outside so I can kick your fucking ass."

The officer warned the defendant to cease his threats and to leave the establishment to which the defendant replied: "I'll either get him tonight or later." The defendant was then placed under arrest.

The defendant was charged in Seattle Municipal Court with a violation of Seattle Municipal Code (SMC) 12A.06-.040 (harassment), which states:

A person is guilty of harassment if with the intent to annoy or alarm another person he repeatedly uses fighting words or obscene language, thereby creating a substantial risk of assault.

A trial to the court was conducted on January 12, 1983. Gray testified that the defendant's language did not make him lose his temper and that he was not provoked to fight. At the close of the City's case, the defendant moved for a dismissal for failure to establish a prima facie case of harassment because Gray was not, in fact, incited to breach the peace. The trial court denied this motion on the basis that the defendant had indicated that he would return and fight Gray. The defense rested and the trial court entered a finding of guilty.

The defendant appealed to the superior court pursuant to the Rules for Appeal of Decisions of Courts of Limited Jurisdiction. The Superior Court affirmed, stating in part:

The court defines the issue in this case as follows, Whether under the City's harassment ordinance there must be an additional element that the addressee was in fact provoked to the point where there was a substantial likelihood of assault on the speaker.

Although the court finds that the addressee in this case may not have been provoked to breach the peace, the court also finds that the additional requirement that the addressee be in fact incited to fight as stated in *Yoakum* [*State v. Yoakum*, 30 Wn. App. 874, 638 P.2d 1264 (1982)] is not an element of the ordinance when applied to a situation involving a civilian addressee.

The court would read all the previous Washington

cases including *Yoakum, Kennewick* [*v. Keller,* 11 Wn. App. 777, 525 P.2d 267 (1974)] and *Pasco* [*v. Dixson,* 81 Wn.2d 510, 503 P.2d 76 (1972)] to limit the higher subjective requirement (that the addressee be in fact incited to the point where there is a substantial risk of assault) to cases involving policemen. These cases seem to carve out a policemen exception for ordinances such as the City's harassment ordinance.

Under the City's ordinance, the elements are met when it is shown that the defendant used fighting words which created a substantial risk of assault. Whether a substantial risk of assault was created is to be determined by an objective test which takes into consideration the entire context of the words spoken, including the actions of others around the addressee. The objective test of *Chaplinsky* [*v. New Hampshire,* 315 U.S. 568, 86 L. Ed. 1031, 62 S. Ct. 766 (1942)] applies where a civilian is the addressee, although a subjective test may apply where a policeman is the addressee.

Discretionary review was granted by this court on September 6, 1983.

The sole issue presented is whether sufficient evidence was presented to sustain a conviction for harassment under SMC 12A.06.040.

Ordinances like SMC 12A.06.040 which proscribe speech have been constitutionally limited to "fighting words," *i.e.,* words whose very utterance inflict injury or tend to incite an immediate breach of the peace. *State v. Montgomery,* 31 Wn. App. 745, 754, 644 P.2d 747 (1982); *Kennewick v. Keller,* 11 Wn. App. 777, 785, 525 P.2d 267 (1974); *Chaplinsky v. New Hampshire,* 315 U.S. 568, 86 L. Ed. 1031, 62 S. Ct. 766 (1942). Such speech "is not in any proper sense communication of information or opinion safeguarded by the Constitution . . .". *Pasco v. Dixson,* 81 Wn.2d 510, 519, 503 P.2d 76 (1972) (quoting *Cantwell v. Connecticut,* 310 U.S. 296, 309, 84 L. Ed. 1213, 60 S. Ct. 900, 128 A.L.R. 1352 (1940)). We do not find in the situation before us any issue involving freedom of speech. A threat of violence to and assault upon the person of another in immediate proximity to the speaker is not an expression protected by amend-

ment 1 of the United States Constitution or article 1, section 5 of the Constitution of the State of Washington.

> "Fighting words"
>> have a direct tendency to cause acts of violence by the persons to whom, individually, the remark is addressed." . . . The test is what a man of common intelligence would understand would be words likely to cause an average addressee to fight. . . . Derisive and annoying words can be taken as coming within the purview of the statute as heretofore interpreted only when they have this characteristic of plainly *tending to excite the addressee to a breach of the peace.*
>
> (Italics ours.) *Chaplinsky v. New Hampshire, supra* at 573; *Gooding v. Wilson,* [405 U.S. 518, 523, 31 L. Ed. 2d 408, 92 S. Ct. 1103 (1972)]. Justice Powell, concurring in *Lewis v. New Orleans,* 415 U.S. 130, 135, 39 L. Ed. 2d 214, 94 S. Ct. 970, 973 (1974), noted:
>> [W]ords may or may not be "fighting words," depending upon the circumstances of their utterance. . . . The words may well have conveyed anger and frustration without provoking a violent reaction from the officer. . . . [However] a properly trained officer may reasonably be expected to "exercise a higher degree of restraint" than the average citizen, and thus be less likely to respond belligerently to "fighting words."

*State v. Yoakum,* 30 Wn. App. 874, 877, 638 P.2d 1264 (1982).

*Cohen v. California,* 403 U.S. 15, 20, 29 L. Ed. 2d 284, 91 S. Ct. 1780 (1971) further described fighting words as speech "directed to the person of the hearer" which consists of "those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." *See Hess v. Indiana,* 414 U.S. 105, 38 L. Ed. 2d 303, 94 S. Ct. 326 (1973). Consequently, "[u]nless there is personally abusive language which is likely to lead to imminent retaliation in a face–to–face encounter, words cannot be proscribed under *Chaplinsky's* fighting words approach." *State v. Authelet,* 120 R.I. 42, 56, 385 A.2d 642, 5 A.L.R.4th 942 (1978).

Neither party challenges the constitutionality of SMC

12A.06.040. Rather, they disagree as to whether an objective or subjective test should be applied in determining criminality under the ordinance. *State v. Yoakum, supra* at 878, held that there was insufficient evidence to support a conviction of disorderly conduct where under the circumstances "the words spoken did not *in fact* incite the addressees—the deputy, the posseman, or the clerk—to breach the peace." The defendant contends that this language requires the application of a "subjective test" which examines the actual effect of the words upon the addressee. He argues that since it was undisputed at trial that the addressee was not in fact incited to violence, there was insufficient evidence to convict him under SMC 12A.06.040. Conversely, the State argues that *Yoakum* strictly limited such subjective standard to situations where the addressee is a police officer.

█ We hold that under the circumstances of this case, the appropriate test to be applied is an objective one. *See State v. Authelet, supra.* We reiterate what we noted in *State v. Montgomery, supra* at 756 n.2 (quoting *State v. John W.,* 418 A.2d 1097, 1104 (Me. 1980)):

> The emphasis in *Chaplinsky* was thus on the nature of the words spoken, not on the subjective response of the actual addressee. But while the test in *Chaplinsky* was objective, it was not wholly abstract; it did not make certain words punishable whenever and wherever they were used. On the contrary, the opinion plainly contemplated that courts enforcing disorderly conduct statutes must look to the actual situation in which the words were used, in order to punish only words which, when they were used, were "plainly likely" to cause a breach of the peace. The New Hampshire Court's opinion in *Chaplinsky,* quoted by the Supreme Court, noted that even classic fighting words are only fighting words "when said without a disarming smile." 315 U.S. at 573, 62 S.Ct. at 770, *quoting* [*State v. Chaplinsky,* 91 N.H. 310, 319, 18 A.2d 754, 762 (1942)]. It is clear 17–A M.R.S.A. § 501(2) requires that fact finders look to the specific context in which words were spoken. Fact finders need not look to the subjective response

of the actual addressee, but they must consider the *situation* of that addressee. In particular, the fact finder must consider those personal attributes of the addressee which were reasonably apparent because those attributes are a part of the objective situation in which the conduct occurred. Thus, when John W. addressed a police officer who was assisting in the arrest of his sister, those facts must be considered part of the situation in which the juvenile's language must be evaluated.

A subjective standard would

make the terms of the statute and the content of the First Amendment shift with the mentation and emotional status of the recipient of the verbal communication. Under an objective standard it is not permissible to make criminality hinge upon the ideological vicissitudes of the listener.

*Anniskette v. State,* 489 P.2d 1012, 1015 (Alaska 1971).

We recognize that *State v. Yoakum, supra,* appears to support a subjective rather than an objective standard. However, we restrict *Yoakum* to its facts, *i.e.,* to those situations where the spoken words are directed to an addressee who is an on–duty law enforcement officer. We find that *Yoakum* is inapplicable to the circumstances on appeal here. We need not decide the question as to the applicable standard in direct citizen–police officer confrontations. *See* Annot., *Insulting Words Addressed Directly to Police Officer as Breach of Peace or Disorderly Conduct,* 14 A.L.R.4th 1252 (1982).

Here, the record indicates that the language of the defendant constituted "fighting words" which "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Chaplinsky,* at 572. The verbal barrage of personally abusive language directed by the defendant toward the victim tended to "incite an immediate breach of the peace" and was clearly of the type "which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke

violent reaction." *Cohen,* at 20.

In situations such as that before the court, the law enforcement officer is in the best position to gauge whether a "substantial risk of assault" exists. Deference should be given to the judgment exercised by the officer on the scene when the evidence does not conflict with the officer's decision. We find that the record here supports the officer's evaluation of the situation; that the defendant had created a substantial risk of assault which could only be avoided by his arrest and detention; and that there existed a distinct possibility that if the officer departed leaving the two antagonists together, an assault would occur. It was not only appropriate, but the duty of the officer, to act before an actual physical assault took place.

There was sufficient evidence from which any rational trier of fact could have found beyond a reasonable doubt that the defendant, "with the intent to annoy or alarm another person . . . repeatedly [used] fighting words . . ., thereby creating a substantial risk of assault." SMC 12A.06.040. *See State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980); *Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979).

The judgment is affirmed.

DURHAM, C.J., and SWANSON, J., concur.

Review granted by Supreme Court October 19, 1984.