[No. 50962–0.  En Banc.  June 6, 1985.]

THE CITY OF SEATTLE, *Respondent*, v. THOMAS ALAN CAMBY, *Petitioner*.

*Kenneth S. Kagan* of *Seattle–King County Public Defender Association,* for petitioner.

*Douglas N. Jewett, City Attorney,* and *Betty Ngan, Assistant,* for respondent.

GOODLOE, J.—Thomas Camby appeals from a decision of Division One of the Court of Appeals which affirms his conviction for violation of Seattle Municipal Code (SMC) 12A.06.040, the harassment ordinance. *Seattle v. Camby,* 38 Wn. App. 462, 685 P.2d 665 (1984). At issue is the sufficiency of evidence presented in this "fighting words" prosecution. To determine whether sufficient evidence exists, this court must decide for the first time what test will be applied to analyze "fighting words" when a civilian is the addressee. We hold that an objective test must be applied to evaluate the words spoken. But to pass constitutional muster, the court in applying the test must look at the words in the actual context or situation in which they were said. We find as a matter of law that the words spoken in this situation are not "fighting words" and that no substantial risk of assault was created. We reverse the Court of Appeals decision and dismiss.

On the evening of November 23, 1982, Glen Gray, a doorman–host at a Seattle restaurant, received complaints about Thomas Camby, the defendant. Gray escorted Camby to the exit. Camby, not wishing to leave, told Gray several times that he was going to take Gray outside and "kick [his] ass". Agreed Report of Proceedings, at 6. Gray motioned to Seattle police officer Frank Kampsen, present at the restaurant on a business check, for assistance. Kampsen also asked Camby to leave. At that point, Camby told Gray to "come outside so I can kick your fucking ass". Agreed Report of Proceedings, at 13. Kampsen again told Camby to be quiet and leave. Camby retorted, "I'll either get him tonight or later." Agreed Report of Proceedings, at 13. Kampsen then arrested Camby.

The defendant was charged in Seattle Municipal Court with a violation of SMC 12A.06.040 (harassment), which states:

> A person is guilty of harassment if with the intent to annoy or alarm another person he repeatedly uses fighting words or obscene language, thereby creating a substantial risk of assault.

At trial, Gray testified that Camby's threats had not provoked him to lose his temper; that he had no intention to go outside and fight Camby; that he wasn't paid enough to fight; and that the officer's presence made him feel somewhat more secure. Kampsen similarly testified that Gray had not been visibly angered by Camby's conduct.

At the close of the City's case, Camby moved for dismissal for failure to establish a prima facie case of harassment because Gray was not, in fact, incited to breach the peace. Camby argued this requirement based on the holding of *State v. Yoakum*, 30 Wn. App. 874, 638 P.2d 1264 (1982). The trial court agreed with defense counsel that the statute required that the person to whom the words are addressed, the addressee, be in the process of continuing in conduct that might result in an assault. However, the trial court determined that the important point in this case was the fact that the defendant indicated he would return in the future and fight Gray and that if the defendant had returned it would have resulted in a substantial risk of assault. The trial court denied the motion to dismiss and entered a finding of guilty.

The defendant appealed to the King County Superior Court pursuant to the Rules for Appeal of Decisions of Courts of Limited Jurisdiction. The Superior Court affirmed, but applied different reasoning. The Superior Court defined the issue as "[w]hether under the City's harassment ordinance there must be an additional element that the addressee was in fact provoked to the point where there was a substantial likelihood of assault on the speaker." Clerk's Papers, at 4. Finding that Gray may not have been in fact provoked, the Superior Court held the

*Yoakum* requirement is not an element of the harassment ordinance when the situation involves a civilian addressee. The Superior Court read precedent to limit the higher, subjective requirement of *Yoakum* to cases involving police officers.

The Superior Court found determination of whether a substantial risk of assault was created when a civilian is the addressee shall be made by the *Chaplinsky v. New Hampshire,* 315 U.S. 568, 86 L. Ed. 1031, 62 S. Ct. 766 (1942) objective test which takes into consideration the entire context of the words spoken, including the actions of others around the addressee. Without applying the test itself, the Superior Court affirmed the trial court.

The Court of Appeals, Division One, granted discretionary review and upheld Camby's conviction. *Seattle v. Camby, supra.* This court granted discretionary review and now reverses the Court of Appeals. While we agree with the Court of Appeals authority, we disagree with its analysis of "fighting words", which did not address the entire context in which the words were spoken.

Determination of whether sufficient evidence existed in this case requires analysis of what test will be applied in evaluating "fighting words". The analysis becomes complicated because the definition of "fighting words" uses language also describing risk of assault.

 "Fighting words", excluded from First Amendment protection, are defined as "words . . . which by their very utterance inflict injury or tend to incite an immediate breach of the peace." (Footnote omitted.) *Chaplinsky,* at 572. *See also Gooding v. Wilson,* 405 U.S. 518, 522, 31 L. Ed. 2d 408, 92 S. Ct. 1103 (1972); *Pasco v. Dixson,* 81 Wn.2d 510, 520, 503 P.2d 76 (1972); *Kennewick v. Keller,* 11 Wn. App. 777, 785, 525 P.2d 267 (1974); *Yoakum,* at 876; *State v. Montgomery,* 31 Wn. App. 745, 754, 644 P.2d 747 (1982); *Camby,* at 465. "Fighting words"

> have a direct tendency to cause acts of violence by the persons to whom, individually, the remark is addressed. . . . The test is what men of common intelli-

gence would understand would be words likely to cause an average addressee to fight. . . . Derisive and annoying words can be taken as coming within the purview of the statute as heretofore interpreted only when they have this characteristic of plainly tending to excite the addressee to a breach of the peace.

*Chaplinsky,* at 573. *See also Gooding,* at 523; *Montgomery,* at 754; *Yoakum,* at 877; *Camby,* at 465–66.

The "fighting words" analysis involves three steps. First, the words must be directed at a particular person or group of persons. *Cohen v. California,* 403 U.S. 15, 20, 29 L. Ed. 2d 284, 91 S. Ct. 1780 (1971). There must be an addressee. Second, the words themselves must be "those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." (Citation omitted.) *Cohen,* at 20. This protects against supersensitive addressees. The addressee's personal disagreement with or anger over words said to him does not, by itself, mean that the words can be punished as fighting words. Presuming the first two steps are present, which in this case they are, the third step looks at the words in the context or situation in which they were made.

As noted by Justice Powell, concurring in *Lewis v. New Orleans,* 415 U.S. 130, 135, 39 L. Ed. 2d 214, 94 S. Ct. 970 (1974): "[W]ords may or may not be 'fighting words,' depending upon the circumstances of their utterance." *See also Yoakum,* at 877; *Camby,* at 466. Similarly, this court has stated: "To show a public disorder, actual or threatened, existing or impending, the uttered words must . . . be related to the circumstances in which they were uttered." *Pasco v. Dixson, supra* at 520.

In *Camby,* the Court of Appeals in its opinion reiterated what it had previously noted in *Montgomery:*

The emphasis in *Chaplinsky* was thus on the nature of the words spoken, not on the subjective response of the actual addressee. But while the test in *Chaplinsky* was objective, it was not wholly abstract; it did not make certain words punishable whenever and wherever they

were used. On the contrary, the opinion plainly contemplated that courts enforcing disorderly conduct statutes must look to the *actual situation* in which the words were used, in order to punish only words which, when they were used, were "plainly likely" to cause a breach of the peace. The New Hampshire Court's opinion in *Chaplinsky,* quoted by the Supreme Court, noted that even classic fighting words are only fighting words "when said without a disarming smile." 315 U.S. at 573, 62 S.Ct. at 770, *quoting [State v. Chaplinsky,* 91 N.H. 310, 319, 18 A.2d 754, 762 (1942)]. It is clear 17–A M.R.S.A. § 501(2) requires that fact finders look to the *specific context* in which words were spoken. Fact finders need not look to the subjective response of the actual addressee, but they must consider the *situation* of that addressee. *In particular, the fact finder must consider those personal attributes of the addressee which were reasonably apparent because those attributes are a part of the objective situation in which the conduct occurred.* Thus, when John W. addressed a police officer who was assisting in the arrest of his sister, those facts must be considered part of the situation in which the juvenile's language must be evaluated.

(Some italics ours.) *Seattle v. Camby,* 38 Wn. App. 462, 467–68, 685 P.2d 665 (1984), quoting *State v. John W.,* 418 A.2d 1097, 1104 (Me. 1980).

Thus, we hold that the addressee's reaction or failure to react is not the sole criteria, but is a factor to be considered in evaluating the actual situation in which the words were spoken. A civilian addressee need not, in fact, be incited to breach the peace. Looking at the actual situation presented in this case, we find an intoxicated defendant being escorted out of a restaurant by a mild mannered, unaroused doorman–host with a police officer present. Given the specific context in which the words were spoken, it was not plainly likely that a breach of the peace would occur.

Likewise, the above analysis requires a finding that the ordinance element of "thereby creating a substantial risk of assault" is not met. SMC 12A.06.040. Furthermore, we find determination of whether a substantial risk of assault is

created is not best gauged by the officer on the scene and deference should not be given to this determination. Whether a substantial risk of assault is created is a separate element of the ordinance which the City must prove beyond a reasonable doubt at trial.

The conviction is reversed and dismissed.

DOLLIVER, C.J., UTTER, BRACHTENBACH, DORE, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

ANDERSEN, J., and DIMMICK, J. Pro Tem., concur in the result.