NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JESUS EDUARDO PINO, *Appellant.*

No. 1 CA-CR 13-0725
FILED 12-23-2014

Appeal from the Superior Court in Apache County
No. S0100CR201200167
The Honorable Donna J. Grimsley, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Emily L. Danies Attorney at Law, Tucson
By Emily L. Danies
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Donn Kessler joined.

---

D O W N I E, Judge:

¶1 Jesus Pino appeals his convictions for aggravated assault, disorderly conduct, and misconduct with weapons. Pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), defense counsel searched the record, found no arguable question of law, and asked that we review the record for reversible error. *See State v. Richardson*, 175 Ariz. 336, 339, 857 P.2d 388, 391 (App. 1993). Defendant was given the opportunity to file a supplemental brief *in propria persona*, but he has not done so. Pursuant to *Penson v. Ohio*, 488 U.S. 75 (1988), this Court ordered additional briefing on two issues: (1) whether Pino's felony disorderly conduct conviction is a lesser-included offense of the aggravated assault conviction; and (2) whether substantial evidence supports the misdemeanor disorderly conduct conviction. Both parties provided supplemental briefs that we have considered.[1] For the following reasons, we vacate the misdemeanor disorderly conduct conviction but affirm the remaining convictions and remand for resentencing.

**FACTS AND PROCEDURAL HISTORY[2]**

¶2 Bouncer D.S. asked Pino to leave the XA Saloon because his attire did not comply with the dress code. Pino became verbally aggressive, threatening to kill D.S. and burn the bar down; D.S. advised Pino he could never return to the bar. As Pino was leaving, Detective Herreras drove by, and Pino stuck his head in the police car window, and yelled "f--- you." Detective Herreras testified Pino was upset "because he had been thrown out of the bar due to the shirt that he was wearing." Detective Herreras tried to calm Pino down and told him to go home.

---

[1] We grant the State's unopposed motion to exceed the page limitation.

[2] We view the facts "in the light most favorable to sustaining the conviction." *State v. Tison*, 129 Ariz. 546, 552, 633 P.2d 355, 361 (1981).

¶3        Pino returned to the XA Saloon later that night; D.S. forcibly escorted him outside.  Bar patrons followed.  As D.S. took Pino outside, Pino fell.  D.S. "saw something sticking out of the back of his jeans," and witness K.S. saw a handle she described as "the top of a knife" protruding from the back of Pino's pants. Pino was again verbally aggressive with D.S. Witness Q.M. saw that Pino's

> right hand kept going to the small of his back and . . . I seen a brown-handled kitchen knife, what I interpreted to be a kitchen knife. . . . Part of the blade was sticking out of his pants, as well, and he made several attempts to go for it.

¶4        Q.M. tried to warn D.S. because "I thought he was going for that knife to hurt [D.S.] or anybody else." D.S. saw Pino gesture as if he were reaching behind his back and testified:

> [F]rom behind a friend said, hey, man, he has a knife on him. And as soon as he said that, I looked down, and when I looked down I saw his hand go back, grab the knife, grab the handle, and went to pull it.  And he was making the pulling gesture is when I hit him.

Pino fell to the ground after D.S. punched him.

¶5        Bar owner J.M. was beside D.S. during the altercation, and as soon as Pino fell, he and other employees began ushering patrons back inside the bar. Once Pino got up, J.M. continued escorting him off the property.  Pino continued threatening J.M. and the bar, and J.M. advised Pino he was not allowed to return. Though Pino was in the street by this time, he stepped back onto the sidewalk toward J.M.  J.M. and Pino exchanged words, and "as [Pino] steps up on the curb, he reaches and out comes that knife.  And he's down in a position . . . to jump." J.M. kicked Pino's hand and shoved him backwards.  Pino fell into a street sign and then left the area.

¶6        Police received a 911 call about a man with a knife at the XA Saloon.  As Detective Herreras drove toward the bar, he saw Pino walk by a pine tree and then back onto the sidewalk.  Police arrested Pino and later found a knife near the pine tree.  Officers took Pino to the hospital.  While there, Pino was cursing, and when Detective Herreras asked him to stop, Pino replied, "You can f---ing suck my d----."  A family that was present "got up and left."

¶7        Pino was charged with two counts of aggravated assault, class three felonies (victims J.M. and D.S.), one count of disorderly conduct, a class six felony, one count of misconduct with weapons, a class four felony, and one count of disorderly conduct, a class one misdemeanor.  The jury convicted him on all counts, found counts one and three were dangerous offenses, and found Pino committed a felony offense while released on bond. The superior court found two or more historical priors and sentenced Pino to concurrent terms of imprisonment, the longest of which is 13.25 years.

¶8        Pino timely appealed.   We have jurisdiction pursuant to A.R.S. §§ 12-120.21, 13-4031, and -4033(A)(1).

## DISCUSSION

¶9        We have read and considered the briefs submitted by counsel and have reviewed the entire record.  *See Leon*, 104 Ariz. at 300, 451 P.2d at 881.  All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure, and the sentences imposed were within the statutory ranges.  Pino was present at all critical phases of the proceedings and was represented by counsel.  The jury was properly impaneled and instructed.   The record reflects no irregularity in the deliberation process.

¶10        In reviewing for sufficiency of evidence, the test is "whether there is substantial evidence to support a guilty verdict."  *See Tison*, 129 Ariz. at 552, 633 P.2d at 361.  "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt."  *State v. Spears*, 184 Ariz. 277, 290, 908 P.2d 1062, 1075 (1996).  Substantial evidence "may be either circumstantial or direct."  *State v. Henry*, 205 Ariz. 229, 232, ¶ 11, 68 P.3d 455, 458 (App. 2003).

## I.    Aggravated Assault

¶11        To prove the two aggravated assault counts, the State was required to prove: (1) Pino committed an assault or intentionally placed victims D.S. and J.M. in reasonable apprehension of imminent physical injury; and (2) Pino used a deadly weapon or dangerous instrument.  A.R.S. §§ 13-1203(A)(2), -1204(A)(2).  A deadly weapon means anything designed for lethal use. A.R.S. § 13-105(15).  A dangerous instrument means anything that under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious physical injury.  A.R.S. § 13-105(12).

4

¶12 J.M. testified Pino verbally threatened him, including a threat to kill him, and pulled out a knife during their confrontation. J.M. testified that, had he not been paying attention, he would "have got stuck with that knife."

¶13 D.S. testified Pino threatened to kill him and returned to the bar after being instructed not to do so. D.S. saw a "foreign object" sticking out of the back of Pino's jeans. Pino gestured as if he were "reaching behind his back." D.S. stated that although Pino "never pulled [the knife] completely out," he "certainly" had his hand on it. D.S. testified Pino "threatened my life" and that under the circumstances, D.S. "was absolutely apprehensive," "felt intimidated," and "felt that [he] was in immediate danger."

¶14 The victims' testimony provided substantial evidence of an assault. The knife was admitted as an exhibit, and the jury heard testimony about its characteristics. This evidence, coupled with the victims' testimony, established the knife as a dangerous instrument or deadly weapon. *See State v. Williams*, 110 Ariz. 104, 105, 515 P.2d 849, 851 (1973) ("A knife is a deadly weapon.").

## II. Felony Disorderly Conduct

¶15 The State alleged:

On or about June 22, 2012, at the XA Saloon . . . Pino, with the intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, recklessly handled, displayed or discharged a deadly weapon or dangerous instrument, in violation of A.R.S. §§ 13-2904(A)(6) and 13-704.

¶16 If J.M. or D.S. were the alleged victim of this count, it would raise double jeopardy concerns. *See State v. Angle*, 149 Ariz. 478, 479, 720 P.2d 79, 80 (1986) (Disorderly conduct under A.R.S. § 13-2904(A)(6) constitutes a lesser-included offense of aggravated assault under A.R.S. § 13-1204(A)(2).); *State v. Miranda*, 198 Ariz. 426, 429, ¶ 13, 10 P.3d 1213, 1216 (App. 2000) ("[D]isorderly conduct under section 13-2904(A)(6) is a lesser-included offense of aggravated assault under section 13-1204(A)(2)."). Thus, our *Penson* order directed the parties to brief this issue.

¶17 According to the State, no double jeopardy issue exists because the convictions for aggravated assault (Count 1) and disorderly conduct (Count 3) "stemmed from separate acts and a different victim." The State also argues, "Count 3 did not name any person as the victim; thus

the charge alleged that Appellant disturbed the peace of a 'neighborhood'" and the evidence supported a conviction on that basis. We agree.

¶18 Disorderly conduct under A.R.S. § 13-2904 may be committed against a specific person or a neighborhood.[3] *In re Julio L.*, 197 Ariz. 1, 2-3, ¶¶ 1, 8, 3 P.3d 383, 384-85 (2000). When a "defendant is charged with disorderly conduct for disturbing the peace of a neighborhood, the defendant's conduct may be measured against an objective standard, and the state need not prove that any particular person was disturbed." *State v. Burdick*, 211 Ariz. 583, 585, ¶ 8, 125 P.3d 1039, 1041 (App. 2005).

¶19 Trial evidence established that Pino acted with intent to disturb the peace and quiet of a neighborhood. He went back to the bar with a knife after being told not to return. The bar was extremely busy, and after Pino caused a scene, it became "chaotic." Pino made repeated threats. Instead of leaving when asked to do so, Pino attempted to fight D.S. and J.M. with a knife. A large crowd of bar patrons witnessed the events. Trial witnesses, including Q.M., testified Pino's actions disturbed their peace and quiet.

¶20 The evidence also established Pino recklessly handled or displayed a deadly weapon or dangerous instrument. He placed the knife inside the back of his pants, where several patrons saw it. Witnesses saw Pino grab the knife handle. As discussed, *supra*, the knife qualified as a dangerous instrument.

¶21 Substantial evidence supports Pino's felony disorderly conduct conviction, and double jeopardy principles do not require us to vacate that conviction.

### III. Misdemeanor Disorderly Conduct

¶22 The misdemeanor disorderly conduct charge required the State to prove: (1) Pino acted with the intent to disturb the peace or quiet of a neighborhood, family, or person or with knowledge of doing so; and (2) he used abusive or offensive language or gestures to any person present in

---

[3] "Neighborhood" is interpreted by its common meaning. *State v. Cisneroz*, 190 Ariz. 315, 317, 947 P.2d 889, 891 (App. 1997) ("We find no merit to appellant's argument that the term 'neighborhood' refers only to a locality. Reference to any standard dictionary indicates that a common meaning also is: 'A number of people forming a loosely cohesive community within a larger unit . . . .'") (quoting *State v. Johnson*, 112 Ariz. 383, 385, 542 P.2d 808, 810 (1975).

a manner likely to provoke immediate physical retaliation by such person. A.R.S. § 13-2904(A)(3). This count arose from Pino's conduct at the hospital. Detective Herreras testified Pino was "obviously upset and hollering and yelling" and "cursing at me." A man, woman, and young child were nearby. Detective Herreras asked Pino to stop cursing, and Pino responded, "You can f---ing suck my d---." After Pino made that statement, the family "got up and left."

¶23        Regarding the second element of this count, the right to free speech is constitutionally protected. *In re Louise C.*, 197 Ariz. 84, 86, ¶ 7, 3 P.3d 1004, 1006 (App. 1999). Generally, offensive language does not constitute disorderly conduct unless it amounts to "fighting words." *Id.* Fighting words require: (1) the words be directed at a particular person or group of persons; (2) they are personally abusive epithets that when addressed to the ordinary citizen are inherently likely to provoke violent reaction; and (3) in context, it is likely the addressee would react violently. *In re Nickolas S.*, 226 Ariz. 182, 187, ¶ 24, 245 P.3d 446, 451 (2011) (discussing fighting words in context of criminal abuse of a teacher).

¶24        Although a family was present while Pino was cursing, the State did not prove or argue that his words were directed at the family. In fact, Detective Herreras testified Pino was "cursing at me" and only said, "You can f---ing suck my d---" after Detective Herreras told him to stop cursing.

¶25        The evidence also failed to demonstrate that Pino's words were inherently likely to provoke a violent reaction. Although actual retaliation is not required, "[t]he addressee's personal disagreement with or anger over [the] words . . . does not, by itself, mean that the words can be punished as fighting words." *Id.* at 187-88, ¶ 24, 26, 245 P.3d 451-52. Thus, one may consider the "listener's status and context, and may take into account his or her subjective reaction in assessing whether speech rises to the level of fighting words." *Id.* at 188, ¶ 28, 245 P.3d at 452.

¶26        The family members were not called as witnesses. The fact Pino's words may have offended their sensibilities is insufficient to show the words were inherently likely to provoke a violent reaction. *See State v. Brahy*, 22 Ariz. App. 524, 525, 529 P.2d 236, 237 (App. 1974) (discussing Supreme Court cases striking down state statutes as "too broad when they include[] as a violation any conduct . . . offensive to public sensibilities" because "statute[s] must be drawn or interpreted to include, as a violation, only those epithets amounting to 'fighting words'"). Moreover, the family's reaction was not to respond with fighting or violence, but to leave the area.

Although Detective Herreras testified the child was young, "First Amendment protections should not dissolve merely because words are spoken to a particularly sensitive or combative addressee." *In re Nickolas S.*, 226 Ariz. at 188, ¶ 26, 245 P.3d at 452.

¶27 Pino's statements, if directed at anyone, were directed at police officers. However:

> As the Supreme Court has suggested, the fighting words exception recognized in *Chaplinsky* [*v. New Hampshire*, 315 U.S. 568 (1942)] requires a narrower application in cases involving words addressed to a police officer, "because a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'"
>
> The rule requiring narrower application of the fighting words doctrine with respect to words addressed to a police officer is also compelled by "the constitutional shield [that protects] criticism of official conduct."

*United States v. Poocha*, 259 F.3d 1077, 1080-81 (9th Cir. 2001).

¶28 Although Pino's words were vulgar, the record is devoid of evidence or suggestion they would have provoked an ordinary officer to physically retaliate. *See In re Nickolas S.*, 226 Ariz. at 188-89, ¶¶ 29-30, 245 P.3d at 452-53 (average teacher's reaction to repeated insults, unaccompanied by threats, would not be to physically retaliate against student). Detective Herreras did not testify Pino's words provoked him personally but rather that he asked Pino to stop cursing "[d]ue to [proximity of] the child." Additionally, "[t]he Supreme Court has consistently held that the First Amendment protects verbal criticism, challenges, and profanity directed at police officers unless the speech is 'shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'" *Poocha*, 259 F.3d at 1080. There was no evidence Pino made any gestures or movements along with his profane statements. *Cf. Brahy*, 22 Ariz. App. at 525, 529 P.2d at 237 (affirming disorderly conduct conviction of defendant who repeatedly directed profanity at officer and spit on officer). On this record, insufficient evidence exists to support the misdemeanor conviction for disorderly conduct.

## IV.     Misconduct with Weapons

**¶29**          The offense of misconduct with weapons required the State to prove Pino knowingly possessed a deadly weapon or prohibited weapon while he was a prohibited possessor.  A.R.S. § 13-3102(A)(4).  Substantial evidence supports Pino's knowing possession of the knife, and the knife qualified as a deadly weapon.[4]  The parties stipulated that Pino was a prohibited possessor.  Thus, sufficient evidence exists to support Pino's misconduct with weapons conviction.

### CONCLUSION

**¶30**          For the reasons stated, we vacate Pino's conviction and sentence for misdemeanor disorderly conduct but affirm the remaining convictions and sentences.  We remand for resentencing.  Counsel's obligations pertaining to Pino's representation in this appeal have ended. Counsel need do nothing more than inform Pino of the status of the appeal and his future options, unless counsel's review reveals an issue appropriate

---

[4]      The parties submitted proposed jury instructions prior to trial, stating that the "State of Arizona and Defense Counsel jointly propose the following verdict forms and jury instructions for the jury's use."  The parties' proposed preliminary instructions correctly stated the elements of misconduct with weapons.  However, their proposed final instruction, which the court gave, omitted the "knowingly" element of that offense. *See* A.R.S. § 13-3102(A).  Nothing in the record or in Pino's brief suggests the defense did not affirmatively request this final instruction; therefore, we do not review for fundamental error.  *See State v. Logan,* 200 Ariz. 564, 565, ¶ 8, 30 P.3d 631, 632 (2001) ("[W]hen a party requests an erroneous instruction, any resulting error is invited and the party waives his right to challenge the instruction on appeal.").

for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). On the court's own motion, Pino shall have thirty days from the date of this decision to proceed, if he desires, with an *in propria persona* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama